## STATEMENT OF OFFENSE

On May 28, 2026, members of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") conducted a controlled purchase of narcotics from Damian JOHNSON, utilizing a confidential informant ("CI"). The controlled purchase occurred at the Shell Gas Station located at 5010 Benning Road SE, Washington, DC.

More specifically, at approximately 12:00 PM, ATF met with the CI at a predetermined staging location. ATF searched the CI and their vehicle, provided the CI with prerecorded government funds, and outfitted the CI with electronic recording equipment. The CI departed the staging shortly thereafter and met with JOHNSON at the Shell Gas Station. JOHNSON was in the driver's seat of a 2005 Hyundai Sonata with VA Tag TCV4458, which was not registered to him. An unidentified female and child were sitting in the front-passenger seat of the vehicle. JOHNSON pulled out a plastic bag containing several small, clear, and knotted baggies from his pants pocket. JOHNSON removed three plastic bags containing a white powdery substance and a white rock-like substance (which had a total weight of approximately 5.6 grams) and exchanged them for $500 of the prerecorded government funds. The white rock-like substance field-tested positive for cocaine, but the white powdery substance did not.

On June 1, 2026, ATF, alongside members of the Drug Enforcement Agency ("DEA") and the Metropolitan Police Department ("MPD"), conducted another controlled purchase of narcotics from JOHNSON, utilizing a CI. The controlled purchase occurred at the same Shell Gas Station.

More specially, at approximately 12:45 PM, ATF met with the CI at a predetermined staging location. ATF searched the CI and their vehicle, provided the CI with prerecorded government funds, and outfitted the CI with electronic recording equipment. At approximately 12:51 PM, the CI departed the staging location and responded to the Shell Gas Station. At approximately 1:10 PM, JOHNSON arrived at the Shell Gas Station, driving the same Hyundai Sonata from the previous transaction. The CI approached the front-passenger side of the vehicle and observed an unidentified female and child sitting in the front-passenger seat of the vehicle. JOHNSON pulled out a clear plastic bag containing blue pills from his groin area. JOHNSON then counted the pills, put five of them in a small clear plastic bag, and handed the bag to the CI. JOHNSON then handed to the CI another small, clear, and knotted bag containing a white rock-like substance. In exchange, the CI handed to JOHNSON $350 of prerecorded government funds.

During the latter transaction, the CI observed a pistol tucked between the driver's seat and the center console of the vehicle. JOHNSON told the CI that the pistol was a Glock 26. The CI asked JOHNSON if the firearm was for sale. JOHNSON told the CI that he had purchased the firearm for $1,000. The CI offered to buy the pistol for $800, but JOHNSON said he would not do so for that amount. The CI then offered to buy the pistol for $900, to which JOHNSON agreed. The CI told JOHNSON that they (*i.e.*, the CI) would need to go to the ATM to get more money. JOHNSON told the CI that he was going to leave and asked the CI to give him a call when they had the money. JOHNSON then left the area.

The CI left the area and returned to the staging location at approximately 1:25 PM. ATF took possession of the narcotics. The white rock-like substance, which had a total weight of

1

approximately 2.1 grams, field-tested positive for cocaine. The five blue pills, which had a total weight of approximately 1.8 grams, did not field-test positive for fentanyl.

About an hour later, ATF attempted to conduct a controlled purchase of the firearm from JOHNSON. The controlled purchase was scheduled to take place at the same Shell Gas Station.

At approximately 2:00 PM, ATF met with the CI at a predetermined staging location. ATF searched the CI and their vehicle, provided the CI with prerecorded government funds, and outfitted the CI with electronic recording equipment. The CI departed the staging location at approximately 2:10 PM and arrived at the Shell Gas Station shortly thereafter. However, JOHNSON did not return to the Shell Gas Station and did not answer the CI's calls or text messages. Therefore, ATF directed the CI to return to the staging location at approximately 3:00 PM. While on their way to the staging location, the CI received a call from JOHNSON, who stated that he was on his way to the Shell Gas Station.

At approximately 3:05 PM, JOHNSON arrived at the Shell Gas Station driving the same Hyundai Sonata. The CI returned to the Shell Gas Station a few minutes later.

Upon arriving, the CI exited their vehicle and approached the driver's side of JOHNSON's vehicle. During surveillance of the transaction, JOHNSON pulled out a firearm from the front of his waistband, and the CI handed to JOHNSON $900 of prerecorded government funds. The CI also provided a paper bag in which JOHNSON should put the firearm. JOHNSON put the firearm in the paper bag and began to count the funds. After JOHNSON had finished counting the funds, JOHNSON pulled the firearm back out of the bag and pointed it at the CI. JOHNSON stated, "I have got to have this money," while turning on the ignition of the vehicle. JOHNSON asked the CI to step away. The CI asked JOHNSON if they could have the money back, to which JOHNSON replied, "Step away." JOHNSON then said, "Five," which the CI interpreted as a countdown. The CI yelled, "Are you robbing me," as they moved away from JOHNSON's vehicle. Below are still images of part of this interaction.

  

ATF units immediately initiated a rescue operation. As the units were rushing to rescue the CI, JOHNSON pulled out of the Shell Gas Station at a high rate of speed and collided with an ATF vehicle and a civilian vehicle. JOHNSON quickly exited his disabled vehicle and fled on foot away from the area.

About an hour later, at approximately 4:35 PM, a camera captured JOHNSON waiting outside of and ultimately entering ███████████████████████, which is approximately 0.5 miles from the Shell Gas Station. Below is a screenshot from that video.



As the units converged toward the apartment building, JOHNSON jumped out of the third floor of the building and sustained injuries to his leg in the process. ATF and MPD units began canvassing the area for JOHNSON. Law enforcement observed JOHNSON about fifteen minutes later at approximately 4:50 PM and detained him without any further incident. Between the time of the robbery and arrest, JOHNSON had changed his hair style and clothing; he was also now wearing a wig and lipstick. However, JOHNSON's tattoos were consistent with the ones captured in the video of the controlled purchase of the firearm.

Around the same time of JOHNSON's arrest, the U.S. Secret Service Crime Scene Search Unit ("CSSU") responded to the scene to process the Hyundai Sonata. CSSU located a loaded 10mm Glock 29 handgun bearing serial number CCRT543, approximately 22 grams of white powdery substance, and $900 of the same (based on its serial numbers) prerecorded government funds. The handgun was visible in plain view on the driver's seat, on which JOHNSON had been sitting at the time he had fled from the vehicle. The white powdery substance field-tested positive for cocaine.

3



The handgun was loaded with one round of ammunition in the chamber and fourteen rounds in the magazine. There are no firearm or ammunition manufacturers in the District of Columbia. Therefore, the recovered ammunition described above necessarily traveled in interstate commerce before it was recovered in the District of Columbia.

At the time of this offense, JOHNSON had been previously convicted of a crime punishable by a term of incarceration greater than one year. More specifically, JOHNSON was convicted of Carrying a Pistol Without a License in Superior Court Case No. 2021 CF2 001557 on October 24, 2022; Carrying a Pistol Without a License in Superior Court Case No. 2022 CF2 001542 on October 21, 2022; and Unlawful Possession of a Firearm by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year in D.C. District Court Case No. 24-CR-32 on January 28, 2025.

As such, your affiant submits that probable cause exists to charge Damian JOHNSON (⬛⬛⬛⬛⬛⬛⬛) with a violation of 18 U.S.C. § 922(g)(1), which makes it a crime for a convicted felon to possess a firearm and ammunition; 21 U.S.C. § 841, which makes it a crime to possess a controlled substance (*e.g.*, cocaine) with the intent to distribute it; and 18 U.S.C. § 924(c)(1)(A)(i), which makes it a crime to possess a firearm during a drug trafficking offense.

Respectfully submitted,

Christian Ngassa
Badge #6445
ATF

Subscribed and sworn by telephone pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on June 4, 2026.


HONORABLE G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE